UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. |
| | : | |
| $12,450.00 IN UNITED STATES CURRENCY, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| [CLAIMANT:  CADIEN PIKE] | : | August 27, 2019 |

VERIFIED COMPLAINT OF FORFEITURE

Now comes Plaintiff, United States of America, by and through its attorneys, John H. Durham, United States Attorney for the District of Connecticut, and David C. Nelson, Assistant United States Attorney, and respectfully states that:

1. This is a civil action in rem brought to enforce the provision of 21 U.S.C. § 881(a)(6), which provides for the forfeiture of proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq.

2. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355.  Venue is appropriate in the District of Connecticut by virtue of 28 U.S.C. § 1395(b).

3. The Defendant is $12,450.00 in United States Currency ("Defendant Currency").

4. The Defendant Currency is located within the jurisdiction of this Court.

5. On May 30, 2019, Cadien Pike submitted an administrative claim of ownership to the Defendant Currency.

**Background of Investigation**

6. On January 16, 2019, Cadien Pike ("Pike") arrived at the Jet Blue ticket counter at Bradley International Airport in Windsor Locks, CT. Pike arrived at approximately 3:15 p.m. and purchased a one-way ticket to Florida.

7. During the airport security's bag screening process, an anomaly was noticed within Pike's carry-on bag, which led law enforcement to conduct a secondary screening of the bag. During the secondary screening process, law enforcement noticed an unidentified bulk mass within some clothing stored in the carry-on bag. This discovery led to law enforcement's initiating a hand search of the bag to ensure that the object secreted in the bag was not a threat to passengers or the aircraft.

8. During the hand search of Pike's carry-on bag, law enforcement located bulk cash laying inside a bag of "FANTA", a Jamaican broad leaf tobacco. Law enforcement asked Pike how much money was located within the bag and he replied "$10,000." When law enforcement asked Pike a second time how much currency was in the carry-on he replied "$12,000 to $13,000."

9. Law enforcement then began an interview of Pike in a public area of the airport. During this interview, Pike was not restrained in any way. Further, Pike was advised that he was free to leave at any time and free to stop answering questions as well.

10. Before the interview began, a trained law enforcement narcotics detection canine performed a free air search and alerted to the presence of narcotics on the Defendant Currency,

which was located on the top of a table next to Pike's bag and clothes.  The canine alerted to the narcotics odor without being commanded to do so.

11.     Law enforcement asked Pike if the Defendant Currency was his and he said it was and that he was aware that it was in his bag.  Law enforcement asked Pike why he kept the Defendant Currency hidden in the "FANTA" and he replied that he kept it there so he would not be robbed.  When asked who would rob him at the airport, Pike replied "anybody."

12.     Pike told law enforcement that the Defendant Currency was money that he earned from selling a car in Jamaica. Pike provided law enforcement with what he claimed was a bill of sale for the transaction but his name was listed nowhere on the document.

13.     Pike next told law enforcement that he flew to Bradley International the morning of January 16, 2019 to go to a car auction in the Hartford, Connecticut area.  When asked by law enforcement, Pike could not provide the name of the auction company or in what specific town the auction was being held, and admitted that he did not have the appropriate license to attend the auction.  Pike told law enforcement that when he arrived at the auction, the van he wished to purchase had already been sold.  Law enforcement asked Pike what type of van he wished to purchase at the auction and he replied a "Toyota Tundra", which is in fact a pickup truck, not a van.

14.     Law enforcement again asked Pike about the origin of the Defendant Currency he had hidden in his carry-on.  Pike said he sold a car in Jamaica and flew with the proceeds to Florida where he declared the cash to customs officials.  Law enforcement determined that Pike did fly from Jamaica to Florida but he did not declare any of the Defendant Currency or any

3

other monies upon entering the United States.  When questioned about this, Pike claimed that it was because customs agents were being lazy because of the government shutdown.

15.     Through their training and experience, law enforcement knows that the travel profile of carrying currency into Florida from a different state is a familiar tactic one used by narcotics smugglers.  Traffickers often travel to Florida carrying an amount of bulk cash received from a narcotics purchaser in another state.  Once in Florida, they provide the currency to a larger drug trafficking organization.  Pike, or others, would then provide instructions to where narcotics should be delivered to these customers in another state, in this case Connecticut.  This is an effort by the organizations to keep the currency separate from the narcotics.

16.     Based on the above information, it is believed that $12,450.00 in United States Currency constitutes proceeds from the illegal sale and distribution of narcotics and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

17.     The Defendant Currency represents proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq., and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that a Warrant of Arrest In Rem be issued for $12,450.00 in United States Currency; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

  /s/ John B. Hughes
JOHN B. HUGHES
CHIEF, CIVIL DIVISION
ASSISTANT U. S. ATTORNEY


*/s/ David C. Nelson*
DAVID C. NELSON
ASSISTANT U.S. ATTORNEY
FEDERAL BAR NO. ct25640
157 CHURCH STREET, 25TH FLOOR
NEW HAVEN, CT  06510
(203) 821-3700
(203) 773-5373 (fax)
David.C.Nelson@usdoj.gov

## DECLARATION

I am a Task Force Officer for the United States Customs and Border Protection, and the agent assigned the responsibility for this case.

I have reviewed the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of August, 2019.


    */s/ Zachary Kashmanian*
ZACHARY KASHMANIAN
TASK FORCE OFFICER
U.S. CUSTOMS AND BORDER PROTECTION